IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIANET PAGÁN, *et al.*,

     Plaintiffs

        v.

BANCO SANTANDER DE PUERTO
RICO, *et al.*,

     Defendants

CIVIL NO. 09-1226 (JAG)

OPINION AND ORDER

Garcia-Gregory, D.J.

      Pending before the Court are a multitude of motions filed by all parties. In an effort to unravel this thicket of filings, the Court will first consider the Joint Motion to Dismiss filed by Dianet Pagán, Orlando del Rio Pérez and their conjugal partnership (jointly "Plaintiffs"), and Management Search and Supporting Services ("MS&SS"). (Docket No. 118). For the reasons stated below, this Court **GRANTS** Plaintiffs' voluntary dismissal of the complaint against Co-Defendant MS&SS, conditioned on Co-Defendant Banco Santander de Puerto Rico's ("Santander") right to assert any claims against MS&SS that may arise from the covenant between them. In the interest of efficiency, this Court will re-label Defendant Santander's Crossclaim against MS&SS as a Third-Party Complaint. (Docket No. 117).

**CIVIL NO.** 09-1226 (JAG)                                                2

Regarding BSPR's Motion for Summary Judgment, the Court holds that triable issues of fact remain as to whether Santander was Dianet Pagan's (hereinafter "Plaintiff" or "Pagán") employer for purposes of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and whether Santander's proffered reasons for her dismissal are pretextual. On the other hand, the Court finds that Plaintiffs did not present sufficient evidence for their failure to re-hire claim to survive summary judgment. As such, this Court **GRANTS** in part and **DENIES** in part said motion. Finally, this Court **GRANTS** Plaintiffs' Motion to Amend the Complaint. (Docket No. 115).

**I. Factual and Procedural Background**

In March 2005, Plaintiff was recruited by Atento, a temporary services agency, to work in Banco Santander as a call center attendant. (Plaintiffs' Additional Relevant Facts ["PARF"], Docket No. 89-1, ¶ 2). Some months later, MS&SS replaced Atento as Santander's temporary service provider. (Santander's Statement of Uncontested Facts "SUF", Docket No. 112, ¶ 2). Santander and MS&SS entered into a "Service Contract" through which MS&SS agreed to provide temporary personnel to cover telemarketing services and customer service at Santander's call center. Id. During this time, Pagán signed several temporary service contracts with MS&SS, and continued to render services as a call center attendant at Santander. (Exhibit 6, Docket

**CIVIL NO.** 09-1226 (JAG)                                              3

No. 101-3). From the record, it appears that no such contracts were signed with Santander.

Santander's Commercial Network Operations Center ("CNOC") is essentially a call center that provides support to bank employees such as tellers and loan officers. It is part of a larger support network called the Branch Operations Group, directed by Iván Cruz ("Cruz"). On November 2007, Cruz identified certain deficiencies with the services provided by the CNOC. (SUF ¶ 35, Docket No. 112). To address these defects, Cruz reinforced the CNOC with four employees from the temporary service agency MS&SS. Id. As such, Pagán's last contract with MS&SS assigned her to work as a Branch Support Representative ("*Oficinista de Apoyo a Sucursal*") in the CNOC for a determined period of time, starting on December 10, 2007 and ending on March 31, 2008. (SUF ¶ 34, Docket No. 112). Pagán's duties were essentially to answer calls received at the CNOC from the bank's branches. (SUF ¶ 35, Docket No. 112).

On February 6, 2008, approximately two months after Pagán started working, she began experiencing pregnancy-related complications. (SUF ¶ 37, Docket No. 112). Pagán presented Luis Agosto ("Agosto") - her supervisor at the CNOC - with a medical certificate and notified him of her need to take sick leave. She was scheduled to return on February 27, 2008. While Pagán was on leave, Damaris

**CIVIL NO.** 09-1226 (JAG)                                                   4

González ("González"), a Human Resources employee at Santander, initiated an email exchange with Cruz, Agosto and Guillermo Cambas ("Cambas") explaining Pagán's situation and asking them what they wanted to do regarding her absence. (Docket No. 105-2). Cambas inquired whether the CNOC could deal with Pagán's absence, to which Cruz replied in the affirmative. Id. Cruz then instructed Cambas to "proceed to discharge" Pagán. Id. Pagán was not notified of this decision; rather, in an email directed to Cruz and Agosto, González asked them to refer Pagán to Human Resources because she did "not know she was discharged from the CNOC project." (Exhibit 11, Docket 107-10).

In March 2008, Plaintiff notified MS&SS and Santander that her doctor had ordered absolute rest until her expected delivery date in August. (SUF ¶ 29, Docket No. 112). Upon learning that Pagán would not be available for the rest of her contract's term, Cruz decided to continue operating the CNOC with three temporary employees. (SUF ¶ 45, Docket No. 112). An additional employee has not been hired to work at the CNOC since then. Given the above, Santander instructed MS&SS to inform Pagán that her contract was not going to be renewed after its expiration, but that the bank was willing to place her in available positions whenever she was ready to return. (SUF ¶ 59, Docket No. 112). MS&SS partially complied with Santander's

**CIVIL NO.** 09-1226 (JAG)                                                    5

instructions. MS&SS's Human Resources liason with Santander, Magaly
Roman ("Roman"), notified Pagán that her contract had been terminated
as of March 17, 2008, that is, two weeks prior to the contract's
expiration date. (SUF ¢ 51, Docket No. 112). In any case, Pagán
continued to receive health and related benefits from MS&SS, which
included paid leave and a Christmas bonus, until March 31. (SUF ¢ 52,
Docket No. 112).

Pagán gave birth on August 18, 2008 and her doctor gave her
clearance to work at the end of September 2008. (SUF ¢ 66, Docket No.
112). After giving birth, Pagán notified Roman that she was available
to work. Id. Per Román's request, Pagán sent her resumé to MS&SS so
that she could be considered for available positions with Santander
or any of MS&SS's clients. Id. Roman then informed Santander that she
would offer the first available position at the bank to Pagán. (SUF
¢ 69, Docket No. 112). In one instance, a position became available
in the Mortgages division, but Damaris González told Roman not to
notify Pagán because it was not in her area of expertise. (SUF ¢ 74,
Docket No. 112). Subsequently, several positions became available
in other sections of Santander, for  which Pagán was duly qualified.
(SUF ¢ 71, Docket No. 112). Santander made requests to fill these
positions, but none were offered to Pagán. (SUF ¢ 74, Docket No. 112).
In a letter dated February 26, 2009, MS&SS assured Santander that,

**CIVIL NO.** 09-1226 (JAG)                                              6

as of that date, Pagán had not contacted MS&SS to request employment. (SUF ¶ 72, Docket No. 112). It also indicated that its attempts to contact Pagán had proven futile. Id.

On March 7, 2009, Plaintiffs filed suit against BSPR and MS&SS alleging violations of Title VII, as well as violations of state law. On August 11, 2010, Plaintiffs and Co-Defendant MS&SS filed a joint Motion to Dismiss, requesting the Court to dismiss Plaintiffs' action against MS&SS pursuant to Rule 41(2) of the Rules of Civil Procedure. (Docket No. 118). The motion stated that they had reached a settlement agreement in which Plaintiffs agreed to release MS&SS from liability in exchange for certain consideration. Specifically,

> "plaintiffs will receive certain compensation in consideration for the full settlement and satisfaction of any and all claims which were asserted or could have been asserted in the present lawsuit and all or any judgments which arise for the benefit of other persons or entities, **as a consequence of third party complaints**, or to level or contribute as a consequence of judgments issued in favor of plaintiffs." (Docket No. 118)(Emphasis added).

Co-Defendant Santander opposes the joint motion on several grounds. (Docket No. 120). To wit, that the request for dismissal is belated; that MS&SS was, in fact, Plaintiff's employer; and, that Plaintiff cannot dismiss Santander's independent claims against MS&SS. Accordingly, Santander requests this Court to deny the motion in question.

**CIVIL NO.** 09-1226 (JAG)                                                         7

## II. Voluntary Dismissal of MS&SS

After a motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. Proc. 41(a)(2). The First Circuit has noted that "(t)he basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." Puerto Rico Maritime Shipping Authority v. Leith, 668 F.2d 46, 50 (1st Cir. 1981). Specifically, "dismissal without prejudice should be permitted under the rule unless the court finds that the defendant will suffer legal prejudice." Id. We find no reason to deviate from this norm where the plaintiff requests the dismissal with prejudice and the potential for legal prejudice against a party still exists.[1]

---

[1] Some courts have applied Rule 41(a)(2) differently where, as here, a plaintiff requests the voluntary dismissal with prejudice of a cause of action. *See* Wright & Miller, FPP § 2367 n. 3; *see also* Id. at § 2367 ("Since such a dismissal is a complete adjudication of the claims and a bar to a further action on them between the parties, it has been held that the district court has no discretion to refuse such a dismissal and cannot force an unwilling plaintiff to go to trial."). Nevertheless, the exercise of discretion under Rule 41(2) still requires a court to consider the potential prejudice to other parties when granting a motion for voluntary dismissal. *See e.g.* Atwood v. Pacific Maritime Ass'n, 432 F.Supp. 491 (D.C.Ore. 1977), aff'd 657 F.2d 1055 (9th Cir. 1981) (citing Beaver Associates v. Cannon, 59 F.R.D. 508, 510 (S.D.N.Y. 1973))(The fact that suit will be dismissed with prejudice to the plaintiff is not the only

consideration before the court in determining whether to grant a
motion by the plaintiff for a voluntary dismissal; the possible
effects on others also must be considered.); *see also* <u>Hudson
Engineering Co. v. Bingham Pump Co.</u>, 298 F.Supp. 387 (D.C.N.Y. 1969)
(The court dismissed with prejudice claims between some of plaintiffs
and the defendant, but only on conditions for protection of remaining
plaintiff).

**CIVIL NO.** 09-1226 (JAG)                                              9

    The First Circuit has outlined several factors that courts
should consider when deciding a Rule 41(a)(2) motion: (1) excessive
delay and lack of diligence on the part of the plaintiff in
prosecuting the action; (2) the defendant's effort and expense of
preparation for trial; (3) insufficient explanation for the need to
take a dismissal; and (4) the fact that a motion for summary judgment
has been filed by the defendant. Doe v. Urohealth Systems, Inc., 216
F.3d 157, 160 (1st Cir. 2000).

    When applied to the instant case, we find the results of this
test inconclusive. For instance, Plaintiffs and MS&SS proffered a
reasonable explanation for their request, namely that they had
reached a settlement agreement whereby Plaintiffs had released MS&SS
of liability. Furthermore, the record does not reflect any
particularly excessive delay or lack of diligence in Plaintiffs'
prosecution of their action. Also, their Motion to Dismiss was filed
almost immediately after the parties had settled. On the other hand,
at the time of the joint filing, discovery had been completed and
Santander's motion for summary judgment was fully briefed and awaiting
adjudication. However, "courts need not ... limit their consideration
to these factors," as they are merely a guide and not a mandate. Doe
v. Urohealth, 216 F.3d at 160. Accordingly, we will complement the
test employed above by examining the merits of Santander's argument
that they would be prejudiced upon the voluntary dismissal of the

**CIVIL NO.** 09-1226 (JAG)
10

case against MS&SS.

In this instance, we find that Santander's concerns may be assuaged. Specifically, Santander argues that Plaintiffs are not entitled to dismiss Santander's independent claims against MS&SS. The Court agrees. These claims, according to Santander, arise out of their Servicing Contract with MS&SS as well as from state law. Pursuant to Fed. R. Civ. Proc. 41(c), only Santander may choose to dismiss the claims it has brought against MS&SS. However, there is an additional reason why Santander would not be affected by this Court's dismissal of MS&SS. Evidently, the settlement agreement reached between Plaintiffs and MS&SS would be interpreted under Puerto Rico law. Article 1209 of the Puerto Rico Civil Code provides that "[c]ontracts shall only be valid between the parties who execute them." P.R. Laws Ann. tit. 31, § 3374. As such, those parties cannot contractually deprive Santander of its potential causes of action against MS&SS, since Santander was not a party to that contract.

In light of the above, this Court **GRANTS** Plaintiff's Joint Motion to Dismiss, conditioned on the following: That in no way shall this order be construed as to deprive Santander of any potential claim it has against MS&SS. Since Santander has effectively brought those claims via the Crossclaim filed on August 11, 2010 (Docket No. 117), we find it in the interest of efficiency to consider said filing a

**CIVIL NO.** 09-1226 (JAG)
11

third-party complaint against now third-party defendant MS&SS.


**III. Summary Judgment**

    **A. Legal Standard**

    "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R.Civ.P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

    Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court,

**CIVIL NO.** 09-1226 (JAG)
12

the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. Anderson, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir.2007) (*citing* United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (*citing* Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. Anderson, 477 U.S. at 255.

**B. Analysis**

**CIVIL NO.** 09-1226 (JAG)
13

In her Amended Complaint, Plaintiff alleges that Santander unlawfully terminated her employment due to her pregnancy. (Docket No. 6). She also claims that Santander refused to re-hire her in retaliation for filing an administrative charge before the Equal Employment Opportunity Commission ("EEOC"), all in violation of Title VII and Puerto Rico law. Id. Santander moves for summary judgment, arguing that Plaintiff's pregnancy discrimination claim is without merit because: (1) Santander was not Plaintiff's employer; (2) Plaintiff has failed to establish a *prima facie* case of pregnancy discrimination; (3) Santander has proffered a legitimate and neutral business reason for Plaintiff's termination; and (4) Plaintiff cannot establish that Santander's reasons were pretextual. (Docket No. 57). Santander also seeks summary judgment on Plaintiff's retaliatory faliure to re-hire claim. Id. The Court finds that Plaintiff successfully raised triable issues of fact regarding whether or not Santander was Plaintiff's employer for purposes of Title VII and whether or not Santander's proffered reasons for dismissal were pretextual. However, Plaintiff did not present sufficient evidence to withstand a motion for summary judgment on the retaliatory failure to rehire claim. Accordingly, judgment is granted as a matter of law in favor of Santander on the retaliation claim and denied on all other grounds.

**CIVIL NO.** 09-1226 (JAG)
14


### 1. Pregnancy Discrimination Claim

Title VII makes it unlawful "to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 expanded Title VII's protection to include discrimination "on the basis of pregnancy." 42 U.S.C. § 2000e(k). Under Title VII, an "employer may not discharge an employee based on the categorical fact of her pregnancy." Smith v. F.W. Morse & Co., 76 F.3d 413, 424 (1st Cir. 1996). It may, however, discharge a pregnant employee "if it does so for legitimate reasons unrelated to her pregnancy." Id. In the absence of direct evidence, a plaintiff may advance their Title VII claim under a disparate impact or disparate treatment theory. Id. at 420. Where, as here, the plaintiff chooses the disparate treatment theory, she bears the "burden of proving that the defendant purposefully terminated her employment because of her pregnancy." Id.

A finding of discrimination is warranted where there is "direct evidence that a proscribed factor (such as age, gender, race, or national origin) played a motivating part in the disputed employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000) (citing Price Waterhouse v. Hopkins, 490 U.S. at

**CIVIL NO.** 09-1226 (JAG)
15

276-77). In cases where the "evidentiary equivalent of a smoking gun" is lacking, the plaintiff must resort to the burden-shifting framework formulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Smith, 76 F.3d at 421; *see also* Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). A plaintiff may establish a *prima facie* case of pregnancy discrimination "by showing that (1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person." Smith, 76 F.3d at 421. Both the Supreme Court and the First Circuit have characterized this burden as being relatively easy to meet. *See* Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003); Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253.

Once the *prima facie* case is established, the burden shifts to the employer, who must then articulate a legitimate and nondiscriminatory reason for the dismissal. Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 153 (1st Cir. 1990). "So long as the employer proffers such a reason, the inference raised by plaintiff's *prima facie* case vanishes." Medina-Munoz v. R.J. Reynolds

**CIVIL NO.** 09-1226 (JAG)
16

Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). The last step of this dance is taken by the plaintiff, who must demonstrate "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 248.


   **i. Whether Santander is a Title VII Employer**

   As a threshold matter, the parties dispute whether or not Santander is an employer for purposes of Title VII because Plaintiff was hired through the temporary services company MS&SS instead of directly by Santander. This is one of the fundamental underpinnings of a pregnancy discrimination case under Title VII; if the entity is not that person's employer, it is not liable for recovery under this title.  *See* Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004).

   The Pregnancy Discrimination Act defines employer, in a rather broad fashion, as "a person engaged in an industry affecting commerce" who has a certain number of employees in a certain time span. 42 U.S.C. § 2000e(b). This definition, however, serves us little use. In Title VII cases such as the one at bar, the First Circuit has endorsed the use of "common law agency principles in determining whether an employment relationship exists." Camacho v. Puerto Rico Ports

**CIVIL NO.** 09-1226 (JAG)
17

Authority, 369 F.3d 570, 574 (1st Cir. 2004); *see also* Alberty-Vélez,

361 F.3d at 6 (adopting common law agency test to determine existence

of employment relationship for Title VII purposes); *accord* Shah v.

Deaconess Hosp., 355 F.3d 496, 499 (6th Cir. 2004); Barnhart v. N.Y.

Life Ins. Co., 141 F.3d 1310, 1313 (9th Cir. 1998); Frankel v. Bally,

Inc., 987 F.2d 86, 90 (2d Cir. 1993). According to the Supreme Court,

some factors relevant to this inquiry are

> the skill required; the source of the instrumentalities
> and tools; the location of the work; the duration of the
> relationship between the parties; whether the hiring party
> has the right to assign additional projects to the hired
> party; the extent of the hired party's discretion over when
> and how long to work; the method of payment; the hired
> party's role in hiring and paying assistants; whether the
> work is part of the regular business of the hiring party;
> whether the hiring party is in business; the provision of
> employee benefits; and the tax treatment of the hired
> party. Camacho, 369 F.3d at 574 (*quoting* Nationwide Mutual
> Insurance Co. v. Darden, 503 U.S. 318, 323 (1992)).

No single factor is outcome determinative, "rather, all the incidents

of a given relationship must be weighed in order to reach a conclusion

as to whether that relationship fits within the confines of the

employer-employee taxonomy." Id. Finally, "[a] court must tailor

these factors to the relationship at issue; often certain factors

will not be relevant to a particular case, and a court should not

consider them as favoring either side." Alberty-Velez, 361 F.3d at

CIVIL NO. 09-1226 (JAG)
18

n.7.

The First Circuit has also outlined a joint-employer liability theory. Two companies are 'joint employers' if one of them, "while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Torres-Negrón v. Merck & Co., Inc., 488 F. 3d 34, n.6 (1st Cir. 2007); Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir. 1993) ("A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment."). In any case, the inquiry still centers around the amount of control that entity exerted over the purported employee.

Santander argues that it did not have sufficient control over Plaintiff to be considered an employer under Title VII, pointing to several facts to buttress its theory. For instance, Plaintiff's employment was governed by her contract with MS&SS, and her conduct by MS&SS's employee manual. (SUF ¶ 28, Docket No. 112). Additionally, several employment-related duties were performed by MS&SS, such as the payment of wages and benefits, vacation and sick leave. Some of Santander's arguments center essentially on Plaintiff's economic

**CIVIL NO.** 09-1226 (JAG)
19

reality. However, the First Circuit has specifically rejected such an analysis to be a relevant indicator of whether an employment relationship exists. *See* Alberty-Velez, 361 F.3d at 10. (The source of the purported employee's income "does not weigh heavily" in this analysis.)

On the other hand, as both parties admit, it is clear from the record that Plaintiff's work location was in Santander's Call Center, presumably using equipment provided by Santander. There, Plaintiff formed part of a group that provided assistance to branch employees with respect to the Bank's systems and processes. (SUF ¶¶ 31-35, Docket No. 112). Plaintiffs, on the other hand, argue that MS&SS's role was limited to recruiting employees for Santander and dealing with the associated human resources issues. (Plaintiffs' Opposition p. 12-13; Docket No. 89). As such, the Court finds that the duties performed by Plaintiff were in fact set by Santander; that is to say, her day-to-day routine was determined by Santander, not MS&SS.

The Court considers that an analysis of the factors outlined in Camacho and Torres-Negrón, as applied to the case at bar, does not conclusively identify Santander as a Title VII employer. Further, a court may render judgment as a matter of law on the question of whether there existed an employment relationship only "if the factors point so favorably in one direction that a fact finder could not

**CIVIL NO.** 09-1226 (JAG)
20

reasonably reach the opposite conclusion." <u>Alberty-Velez</u>, 361 F.3d

at 7; *See* <u>Dykes v. DePuy, Inc.</u>, 140 F.3d 31, 38-39 (1st Cir.

1998)(concluding that "a reasonable factfinder could not find on this

record that [Defendant] was not [Plaintiff's] employer" under ERISA).

Granting all inferences in favor of Plaintiff, it must be concluded

that there is a triable issue of fact regarding whether Santander

was Plaintiff's employer for purposes of Title VII.[2] Only a jury may

properly make this determination.


   **ii. Plaintiff's *Prima Facie* Case and Santander's Proffered Reason**

   **for  Dismissal[3]**

---

[2] Plaintiffs also argue extensively that Santander should be considered Pagan's employer because it has not proffered a *bona fide* temporary services contract as required by Puerto Rico's wrongful dismissal statute, Law 80 of May 30, 1976. P.R. Laws Ann. tit. 29, § 185a. It is not entirely clear if Plaintiffs purport to link the determination of an employer under state law with that under Title VII. In any case, this contention misses the mark. The First Circuit has stated that the determination of whether a person is a Title VII employee is purely a matter of federal law. <u>Alberty-Velez</u>, 361 F.3d at 10 (Plaintiff's status as employee under Puerto Rico law is irrelevant to determining whether individual is employee under Title VII); *see also* <u>Serapion v. Martínez</u>, 119 F.3d 982, 987 (1st Cir. 1997).


[3] Plaintiff does claim that there is direct evidence of discriminatory animus. However, because we find that there are triable issues of fact in the pretext analysis, we need not entertain those allegations here.

**CIVIL NO.** 09-1226 (JAG)
21

As discussed below, Plaintiffs raise genuine issues of material fact with respect to whether or not Santander's proffered reason for dismissal was pretextual. Accordingly, we find it proper to "set aside the question of whether [Plaintiff] established a *prima facie* case," and turn to whether there was sufficient evidence of pretext in this case to preclude a grant of summary judgment in favor of Santander. Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003). This technique favors efficiency and has been endorsed by the First Circuit in several cases. *See* Id.; *see also* Rivera-Aponte v. Rest. Metropol # 3, Inc., 338 F.3d 9, 11 (1st Cir. 2003); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001). Thus, we assume *arguendo* that Plaintiff met their *prima facie* case, and that Santander articulated a valid reason for dismissal. As noted above, both burdens are not difficult to meet. *See* Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d at 9 (Employer must "articulate -not necessarily prove- some valid, nondiscriminatory reason for the dismissal."). Accordingly, we proceed to examine whether Santander's proffered reason for dismissal was pretextual.

**CIVIL NO.** 09-1226 (JAG)
22

### iii. Evidence of Pretext

"The pretext analysis, on the other hand, is more demanding." Kosereis v. Rhode Island, 331 F.3d at 213 (*citing* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 (The pretext analysis moves the inquiry "to a new level of specificity")). A finding that "the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive," and thus preclude summary judgment in favor of the employer. Id. at 216. The First Circuit has endorsed several methods of determining whether those reasons constitute pretext. A plaintiff may demonstrate, for instance, that she was "treated differently than other similarly situated employees." Id. at 214. A plaintiff can also show "that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000). Yet another method is to highlight "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Id. In our view, a reasonable jury could find such weakness or inconsistency in Santander's proffered reasons for dismissal.

In their opposition, Plaintiffs note that there was no mention

**CIVIL NO.** 09-1226 (JAG)
23

of the elimination of a position at the CORC prior to the email exchange in February 2008. According to Plaintiffs, the only decision taken in those emails between González, Cruz, Cambas and Agosto was her termination. Further, Plaintiffs aver that Agosto, the CORC supervisor, had no knowledge of the elimination of Plaintiff's position at the CORC. Consequently, Plaintiffs argue that Santander's proffered reason for dismissal was pretextual. We agree with Plaintiffs' contentions.

First, we note that the email exchange mentioned above took place between those who had a direct influence on the decisionmaker. Agosto was the call center's supervisor; Cruz was Santander's director of Branch Operations; and Cambas was an employee of Santander's Human Resources Department. The string of emails in question was initiated by González, who stated that Plaintiff was on "sick leave due to complications with her pregnancy." (Docket No. 105-2). She also stated that if Plaintiff "has a loss of her pregnancy [sic], she is entitled to the full period of maternity." Id. Said exchange ended *only a few days later* with a decision to "discharge" Plaintiff. Id.

Santander proffers several reasons in an attempt to mitigate the import of this email exchange. In short, Santander avers that Plaintiff's dismissal was in line with a previously determined reduction in force, and that subsequent to Plaintiff's dismissal, her

**CIVIL NO.** 09-1226 (JAG)
24

duties were reassigned between the remaining members of the call center. Fatal to Santander's argument is the fact that, prior to said exchange, there was no clear mention of such a reduction on the record. The closest the record comes to this is the deposition testimony of Román. Her testimony hints that sometime in February 2008, MS&SS was aware of the potential elimination of a position or two at the call center, starting in March. (PARF ¶ 40, Docket No. 89-1). However, even if this proves to be true, the temporal proximity between such a determination and Plaintiff's pregnancy is something a reasonable jury could consider in finding evidence of pretext. It is also worthy of note that, in spite of the fact that Agosto was the call center's supervisor, he denied having knowledge of any position being eliminated there. (PARF ¶ 41, Docket No. 89-1). From the above, a reasonable jury may infer the elimination of Plaintiff's position to be a convenient pretext in order to hide Santander's true reason for dismissal.

The First Circuit has been "particularly cautious about affirming an employer's motion for summary judgment on a discrimination claim when the case boils down to whether the employer's stated reasons are pretextual." Kosereis v. Rhode Island, 331 F.3d at 216. We exercise similar caution here. In our view, Plaintiff has undoubtedly raised a triable issue of fact regarding

**CIVIL NO.** 09-1226 (JAG)
25

pretext, sufficient to evade judgment as a matter of law.


**2. Retaliatory Failure To Rehire**

Plaintiffs' second claim is that Santander's failure to re-hire her after childbirth runs afoul of Title VII's bar against retaliation. Title VII prohibits an employer from discriminating "against any of [its] employees because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has ... participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish that the failure to re-hire was retaliatory, Plaintiffs must first make a *prima facie* showing of the following elements: (1) a protected opposition activity; (2) an adverse employment action; and, (3) a causal nexus between the protected conduct and the adverse action. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 806 (1st Cir. 2006). Santander concedes the first prong, but contests the last two. We find that Plaintiffs did not meet the second prong, and thus decline to address the third.

In Velez, the First Circuit stated that "in the absence of a job application, there cannot be a failure-to-hire." Velez, 467 F.3d at 807. The Court further stated that general letters expressing interest in any available job *were not enough* to predicate "a finding

**CIVIL NO.** 09-1226 (JAG)
26

of the adverse employment action prong in a retaliatory failure-to-hire case." Id. Adopting precedent from other Circuits, the Court stated that a plaintiff alleging such a claim must show that: (1) she applied for a particular position; (2) said position was vacant; (3) she was qualified for that position; and (4) she was not hired despite her qualifications. Velez, 467 F.3d at 807. After careful examination of the record, this Court finds that Plaintiffs did not present sufficient evidence to show Pagán actually applied for a particular job position with Santander. Consequently, we find that there was no adverse employment action taken against Plaintiff.

Santander makes much of the fact that, after giving birth, Plaintiff never approached it for work. However, it is inapposite that Plaintiff sent her resume and discussed her availability to work with Román. (SUF, Docket No. 112, ¶ 66) As Santander freely admits, MS&SS was in charge of employment decisions such as recruiting, disciplining and job placement of temporary employees such as Plaintiff. (SUF, Docket No. 112, ¶¶ 7-12). Therefore, the fact that Plaintiff never contacted Santander for work is not relevant. To Santander's benefit, Plaintiffs' argument still fails. To show the existence of an adverse employment action, Plaintiffs must show that Pagán applied for a *specific* job position. The Court in Velez found it unreasonable to hold that general requests for employment were

**CIVIL NO.** 09-1226 (JAG)
27

the legal equivalent of an application, since employers would have to "answer for their failure to hire individuals who did nothing more than express a desire to be employed." Velez, 467 F.3d at 808. In short, the First Circuit does not consider "that an employer is obliged to defend its decision not to hire an individual for a position for which she has not specifically applied." Id.

The only evidence on record supporting Plaintiffs' argument is that Pagán submitted a resume to MS&SS on September 2008, several months after she had been dismissed. (PARF ¶ 56, Docket No. 89-1). One might debate that the reason she submitted her resume for consideration was that she was seeking employment. However, as noted above, even general letters expressing an intent to work in any available opening are not enough to meet the first prong of the test. Further, there is not a shred of evidence that Plaintiff made a *specific request* as to a particular job. Simply put, Plaintiffs have not made a sufficient showing that Pagán's actions rose to the level of an "application" under the test for adverse employment action in Velez. Therefore, this Court finds that Plaintiffs have not met their burden of proof regarding the adverse employment action taken by Santander. Accordingly, the Court GRANTS judgment as a matter of law in favor of Santander on the failure to re-hire claim.


**IV. Motion to Amend Complaint**

**CIVIL NO.** 09-1226 (JAG)
28

With Santander's Motion for Summary Judgment properly addressed, this Court finds no reason to deny Plaintiffs' Motion to Amend the Complaint a second time. The second Amended Complaint tendered by Plaintiffs merely reflects the voluntary dismissal of the action against MS&SS, and brings no new causes of action against Santander. Accordingly, said motion is hereby **GRANTED**. Fed. R. Civ. Proc. 15(a).

## V. Conclusion

In light of the above, the Court **GRANTS** Plaintiffs' and MS&SS's Joint Motion to Dismiss, conditioned under the arrangement described above. (Docket No. 118). Accordingly, MS&SS's Motion to Dismiss Complaint is hereby **GRANTED**. (Docket No. 132). The Court will thus consider Santander's Crossclaim as a Third Party Complaint against MS&SS (Docket No. 117), and will **DENY** MS&SS's Motion to Strike said Crossclaim. (Docket No. 122). Finally, given our decision regarding the Joint Motion to Dismiss, MS&SS's Motion for Summary Judgment is also **DENIED** as moot. (Docket No. 77).

With regards to Santander's Motion for Summary Judgment, judgment is **GRANTED** as a matter of law in favor of Santander on the retaliation claim and **DENIED** on all other grounds. (Docket No. 57).[4]

---

[4] Additionally, Plaintiffs' Motion for Leave to File Surreply to Santander's Opposition to Plaintiff's Additional Relevant Facts is hereby **DENIED** as moot. (Docket No. 119).

**CIVIL NO.** 09-1226 (JAG)
29

Finally, Plaintiffs' Motion to Amend the Complaint is hereby **GRANTED**.

(Docket No. 115).


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of February, 2011.



S/ Jay A. García-Gregory
JAY A. GARCÍA-GREGORY
United States District Judge